IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATIC TEMPERATURE CONTROL CONTRACTORS, INC.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S [36] MOTION TO AMEND<br><br>Case No. 2:22-cv-00808-CMR<br><br>Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings, including entry of final judgment (ECF 33). 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court is Defendant Automatic Temperature Control Contractors, Inc's (Defendant or ATCC) Motion for Leave to Amend Answer (Motion) (ECF 36). Defendant seeks to assert a Counterclaim and to add the three Affirmative Defenses outlined in the proposed amended answer attached as Exhibit A to the Motion (Proposed Amended Answer) (ECF 36-1). Plaintiff Pension Benefit Guaranty Corporation (Plaintiff or PBGC) opposes the Motion on futility grounds (ECF 38). In addition to the Motion and Opposition, the court considers Defendant's Reply (ECF 39), and Supplemental Briefing from each party (ECF 42; ECF 47). Having carefully considered the relevant filings, the court finds that oral argument is not needed and decides this matter on the written memoranda. *See* DUCivR 7-1(g). For the reasons below, the court GRANTS the Motion.

I.   BACKGROUND

This suit arises from the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1301-1461 (ECF 36 at 3). Central to the case are two pension plans and seven individuals, four of which the court focuses on and which were allegedly unpaid plan participants

1

under PBGC's Defined Benefit Pension Plan (the Plan) (*id.*). In essence, PBGC seeks to enforce a final agency determination which "found, *inter alia*," that ATCC owed and had failed to pay accrued benefits to the four alleged plan participants (ECF 38 at 7). By amending its answer, ATCC seeks "equitable reformation of the Plan" to correct a scrivener's error so that the Plan, and ultimately the outcome of this case, reflects the alleged understanding and expectations of the participants under their respective plan (ECF 36 at 3, 7). ATCC argues the alleged unpaid participants would benefit from a windfall if compensated under the Plan (*id.* at 5). Defendant also seeks to add the affirmative defenses of laches, waiver, and estoppel, and two other defenses relating to equity and administration of the Plan (ECF 36-1 at 8).

For an employee at ATCC to participate in the Plan, there were only two requirements: (1) the employee had to be twenty-one years of age; and (2) the employee had to have been employed with ATCC for one year (ECF 36 at 3). At issue then is whether the court should allow ATCC to assert a "scrivener's error" counterclaim (ECF 36 at 7). ATCC explains a scrivener's error "like a mutual mistake, occurs when the intention of the parties is identical at the time of the transaction but the written agreement does not express that intention because of that error" (*id.*). Accordingly, ATCC asserts that its creation of a separate profit-sharing plan, under which the alleged unpaid plan participants participated, evidences its intent to exclude the alleged unpaid plan participants from the Plan (*id.*). ATCC also cites to two cases from other circuits in support of allowing the counterclaim: *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808 (7th Cir. 2010); *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Murata Erie N. Am., Inc.*, 980 F.2d 889 (3d Cir. 1992).

PBGC argues ATCC's amendment to add the counterclaim and second affirmative defense regarding the Plan's equity are futile because ERISA does not allow for reformation of plans when

such a reformation would reduce accrued benefits (ECF 38 at 8). As to ATCC's third affirmative defense raising laches, waiver, and estoppel, PBGC argues ATCC is barred from raising these defenses against the United States and that the defenses are too vague (ECF 38 at 13–14). And as to the fourth affirmative defense regarding the administration of the Plan, PBGC argues the defense should be rejected because it had not been previously raised and pursuant to 5 U.S.C. § 706 falls outside of the present record (ECF 38 at 14–15).

In addition to restating its initial arguments, ATCC's Reply adds that its counterclaim and first affirmative defense are not futile under the grounds cited by PBGC because ATCC is not moving to amend the Plan, but rather for equitable relief under it (ECF 39 at 2). ATCC's Reply also raises for the first time that it is under the court's discretion to engage in the futility analysis at the motion to amend phase, and that the viability of ATCC's amendments would be better addressed through substantive briefing (*id.* at 6). Additionally, ATCC argues that the issue of whether the affirmative defenses of laches, waiver, and estoppel is an open issue, and that it never waived its fourth affirmative defense regarding the administration of the Plan (*id.* at 9).

PBGC's supplemental briefing focuses on ATCC's proposed counterclaim and the court's discretion regarding futility. As to the first issue, PBGC argues ATCC's explanation distinguishing between equitable reformation of the Plan and amending the Plan is a distinction without a difference as any reformation allowed by the court under ERISA is unattainable without also changing the text of the Plan (ECF 42 at 2). As to the second, PBGC argues that the court can deny the Motion as it has sufficient briefing, the issue of reformation is simply a legal question not dependent on additional facts, and the cases cited by ATCC where the court did not address futility are inapposite (*id,* at 2–3). ATCC's supplemental brief restates its position on the distinction of equitable reformation and the court's discretion on finding futility (ECF 47).

Having considered the relevant filings and law provided, the court turns to the arguments.

## II. LEGAL STANDARDS

Plaintiff may amend "only with the opposing party's written consent or the court's leave" pursuant to Federal Rule of Civil Procedure 15(a)(2). "Although district courts enjoy discretion" in granting leave to amend, *Quintana v. Santa Fe Cty. Bd. of Commissioners*, 973 F.3d 1022, 1033 (10th Cir. 2020), Rule 15 instructs courts to "freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2). The purpose of this rule is to provide litigants "the maximum opportunity for each claim to be decided on its merits." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

Moreover, the court "may refuse to allow amendment if it would be futile." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (citing *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006)). A proposed amendment is futile if the proposed amendment would be subject to dismissal. *See id.* However, the court may "decline to engage in a futility analysis in the context of a motion to amend if the court determines the futility arguments would be more properly addressed in dispositive motions." *Complete Merch. Sols., LLC v. Fed. Trade Comm'n*, No. 2:19-cv-00963-HCN-DAO, 2020 WL 4192294, at *3 (D. Utah July 21, 2020) (citing *Lambe v. Sundance Mt. Resort*, No. 2:17-cv-00011-JNP, 2018 WL 4558413, at *3 (D. Utah Sept. 21, 2018)).

## III. DISCUSSION

Regarding the standard for amendments under Rule 15, the court notes the Motion is the

first and only request to amend from ATCC and finds that ATCC has not unduly delayed seeking to amend its Answer. Nor does PBGC argue so. The Motion is timely filed in accordance with the June 16, 2023 deadline for amending pleadings set forth in the Scheduling Order (ECF 35) as the Motion was filed on the day of the deadline (ECF 36). When the Motion was filed, no deadlines had run, and all other deadlines have since been vacated awaiting this decision (*see* ECF 44). Additionally, no bad faith has been shown as ATCC proffers it filed the Motion upon learning of the facts comprising the counterclaim (ECF 36 at 6), and PBGC's makes no such claim to the contrary. PBGC also does not argue prejudice and instead focuses its argument on futility. The court therefore turns to futility.

Beginning with Defendant's proposed counterclaim and second affirmative defense regarding the Plan's equity, as the two seem to fit under the same analysis, the court at this point uses its discretion to decline engaging in the futility analysis and allow the amendments to be added to Defendant's answer. Instructive to the court's decision is the discussion and reasoning in the *Lambe* case. There, the court declined to engage in a futility argument regarding the viability of punitive damages because such inquiry was "subject to competing statements and interpretations" requiring the court to weigh testimony that would be more properly evaluated "in the context of a dispositive motion as opposed to a motion for amendment under Rule 15." *Lambe*, 2018 WL 4558413, at *3. Based on the cases cited by Defendant, although not controlling, the court finds that the same reasoning applies here.

In *Young*, the Seventh Circuit held that in ERISA cases, pursuant to § 502(a)(3), equitable reformation of a benefits plan under a scrivener's error theory may be appropriate to avoid an "unfair result." 615 F.3d 808 at 819. The standard to prove this type of claim, however, is a hefty one, as only those parties with objective "'clear and convincing' evidence that [the] plan language

5

is contrary to the parties' expectations will have a viable claim." *Id.* at 820. There, the court also stated that the question of whether equitable reformation is appropriate in these cases should not rest on language ambiguity, but rather the parties' reasonable understanding of the plan. *Id.*

Similarly, in *Murata*, reversing a ruling on a motion for summary judgment, the Third Circuit held that equitable reformation of a plan provision regarding the distribution of excess funds pursuant to § 502(a)(3) under a scrivener's error theory was appropriate in ERISA cases when sticking to the language of the contract would result in an unexpected windfall for the participating parties. 980 F.2d at 907. The Third Circuit, in reversing and remanding the issue regarding the alleged scrivener's error, found that that there were remaining genuine issues of material fact, and directed the district court to examine parol evidence "to determine whether the parties intended something other than what was written" in the plan and "whether equity requires that the ERISA Plans be reformed consistent with that actual intent." *Id.* at 908.

Although these cases are not controlling, the court understands ERISA caselaw to, at this *pleading* stage, allow for the Counterclaim and second affirmative defense to be asserted. Accordingly, the court hereby GRANTS the Motion as to Defendant's counterclaim and second affirmative defense.

As to the other two proposed amendments by Defendant regarding the third affirmative defense alleging the defenses of laches, waiver, and estoppel, and the fourth affirmative defense regarding the administration of the Plan, the court declines the opportunity to engage in the futility analysis and GRANTS the Motion and allows these amendments. *See, e.g.*, *United States ex rel Baker v. Cnty. Health Sys., Inc.*, No. CIV 05-279, 2011 WL 13115254 (D. N. M. Dec. 7, 2011) (stating that the Supreme Court has refrained from entirely barring the estoppel defense against the government); *see also Hinds v. General Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir. 1993)

(explaining that an issue not properly raised before the trial court in a product liability action will not be considered by the appellate body).

The court finds the arguments for dismissing the proposed amendments would be better briefed and decided through dispositive motions. *See Amann v. Off. of Utah Att'y Gen.*, No. 2:18-CV-00341, 2021 WL 6125826, at *3 (D. Utah Dec. 28, 2021) ("These arguments are better suited to dispositive motions, which would permit full briefing on the merits of the affirmative defenses."). Accordingly, the court hereby GRANTS Defendant's Motion to Amend (ECF 36).

In making this ruling, the court expresses no opinion on the viability of the allowed amendments. Rather, the court concludes that the viability of such claims is more appropriately addressed in the context of a dispositive motion as opposed to a motion for amendment under Rule 15. *See Fuller v. REGS, LLC*, No. 10-CV-01209-WJM-CBS, 2011 WL 1235688, at *3 (D. Colo. Mar. 31, 2011) (futility should be addressed in motion to dismiss or summary judgment).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the court hereby GRANTS ATCC's Motion to Amend (ECF 36). Defendant shall file the Amended Answer within seven (7) days. Consistent with the Order Granting the Motion to Vacate the Scheduling Order (ECF 44), the parties are directed to submit a new scheduling order within 5 business days of this Order (ECF 44).

IT IS SO ORDERED.

DATED this 13 March 2024.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah